``

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| DIMITRIUS FOSTER, | No. 2:17-CV-0439-DMC |
|---|---|
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (Docs. 9, 10, and 30), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' briefs on the merits (Docs. 27 and 28).[1]

---

[1] On February 13, 2018, the court directed defendant to submit a Supplemental Administrative Transcript to complete the records in this case. See Doc. 24 (February 13, 2018, order). Plaintiff was permitted leave to file a new opening brief after submission of the Supplemental Administrative Transcript. See id. The Supplemental Administrative Transcript was lodged on February 28, 2018, and plaintiff thereafter filed a new opening brief. See Docs. 25 (notice of lodging Supplemental Administrative Transcript) and 27 (plaintiff's new opening brief). Because plaintiff elected to file a new opening brief, the original opening brief at Doc. 13 is deemed superseded and the matter will proceed on plaintiff's new opening brief filed on April 16, 2018 (Doc. 27), and defendant's answering brief filed on May 16, 2018 (Doc. 28). Plaintiff did not elect to file a reply brief.

1

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1   Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

///

///

| | | |
|---|---|---|
| Step 2 | | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d

///

1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on December 10, 2012. See CAR 16.[2] In the application, plaintiff claims disability began on May 23, 2009. See id. In his brief, plaintiff alleges disability due to "chronic low back pain/strain/sprain associated with L4-5 and less significantly L5-S1 disc bulging and facet arthropathy, bilateral knee osteoarthritis, and adjustment disorder with mixed anxiety and depressed mood." Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on January 23, 2015, before Administrative Law Judge (ALJ) Mark C. Ramsey. In an August 17, 2015, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): chronic low back pain/strain/sprain associated with L4-5 and less significantly with L5-S1 disc bulging and facet arthropathy; bilateral knee osteoarthritis; and adjustment disorder with mixed anxiety and depressed mood;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: light work, except the claimant can only occasionally perform postural activities but can frequently balance; no climbing ladders, ropes, or scaffolds; mentally, the claimant is limited to simple unskilled work;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 18-30.

After the Appeals Council declined review on January 4, 2017, this appeal followed.

---

[2] Citations are the to the Certified Administrative Record (CAR) lodged on September 7, 2017 (Doc. 12), and Supplemental Administrative Transcript (SAT) lodged on February 28, 2018 (Doc. 24).

4

# III. DISCUSSION

In his opening brief, plaintiff argues the ALJ erred by failing to properly consider the opinions of consultative examining physicians Drs. Chiong, Henry, and Van Kirk regarding the need to use a cane.

1. The ALJ's Analysis

At Step 4 of the sequential evaluation, the ALJ considered the medical opinions of record to determine plaintiff's residual functional capacity. See CAR 20-28. Regarding the consultative evaluations performed by Drs. Chiong, Henry, and Van Kirk, the ALJ stated:

> . . .Dr. Aung-Win Chiong, Board Certified, performed an internal medicine CE August 8, 2012, for complaints of low back pain with sciatica, right knee pain and right ankle pain. The claimant reported that his son bought him a cane a year ago and that he lives alone. The physical and neurological examinations were normal, except for some elevated blood pressure (140/92), lumbar spine tenderness and some decreased range of motion (ROM), positive bilateral supine straight leg raising, right wrist tenderness and some decreased ROM, right knee tenderness and some decreased ROM, decreased motor strength of 4+/5 on the right knee joint, 4+/5 right hand grip strength, antalgic gait favoring the left leg, and unable to balance on heels and toes and perform tandem gait. Diagnoses were lumbar radiculopathy, right knee arthritis and right wrist arthritis. The functional assessment indicated the claimant could lift 20 pounds occasionally and 10 pounds frequently, walk/stand up for four hours, sit six hours, occasionally perform postural activities, occasionally perform gross and fine finger manipulation with the right hand, and had workplace limitations but the doctor did not identify the limitations. In commenting on the evaluations, Dr. Chiong indicates that observation of the claimant during the examination and post-examination indicated his symptoms appears to be out of proportion to his physical findings. The doctor further indicated the cane the claimant used appeared be very new even though the claimant alleged he used it for a year but said he recently changed his cane. "Outside of the examination room he was using the cane with an antalgic gait until he turns the corner when the need for the cane was less obvious" (Exhibit 1F).
>
> * * *
>
> Dr. Michael Henry performed an orthopedic CE April 3, 2015, for complaints of low back pain. The limited physical examination was normal, except for some decreased lumbar ROM. The doctor diagnosed displacement of intervertebral disc, site unspecified, without myelopathy. The functional assessment indicated the claimant was limited to less than a full range of sedentary work (Exhibit 15F).
>
> A Report of Contact dated July 10, 2015, indicated the CE at Exhibit 15F was some form of a short version of a normal CE and was not complete. The undersigned after reviewing the CE ordered that the SA be contacted concerning the incomplete CE and ordered a new CE on the claimant.

After ordering the new CE, the SA forwarded a longer vision [sic] of Exhibit 15F, which is at Exhibit 17F, and the new CE ordered was received and entered into the record as Exhibit 18F (Exhibit 16F).

The longer form of Exhibit 15F, now Exhibit 17F, indicated the claimant complained of right knee, back, wrist, and bilateral ankle pain, nerve damage, worse back pain, weakness in the legs, and arthritis in the knees. The physical examination was normal, except for some decreased lumbar spine ROM, positive straight leg raising bilaterally at 65 degrees, mild stiffness and tenderness of the lumbar spine, and walked with a cane. Dr. Henry diagnosed displacement of intervertebral disc, site unspecified, without myelopathy. The functional assessment indicated the claimant was limited to less than a full range of sedentary work (Exhibit 17F).

Dr. Dale Van Kirk performed a comprehensive orthopedic CE June 22, 2015, for complaints by the claimant of low back pain with radiation down the legs and knee pain, right side greater than left. The physical examination was normal, except for some decreased lumbar spine ROM, crepitation and tenderness of the knees bilaterally, abnormal Romberg test, difficulty performing tandem walk, and able to squat halfway. The doctor diagnosed chronic lumbosacral musculoligamenous strain/sprain associated with L4-5 and less significantly L5-S1 broad-based disc bulge as well as posterior facet arthrotopathy noted on MRI in May 2013. He also diagnosed bilateral knee osteoarthritis. The functional assessment indicated the claimant could perform light work, using a cane when walking on even and uneven train [sic] due to balance problems, occasionally perform postural activities (the medical source statement form indicates no balancing, crouching or crawling but all other postural activities occasionally), and avoid working in extreme cold and/or damp environments and at unprotected heights. The doctor identified no manipulative limitations (Exhibit 18F).

CAR 21-24.

As to the opinions expressed by these doctors, the ALJ stated:

As for the opinion evidence, the undersigned gave minimal weight to the medical opinions of Dr. Henry (Exhibits 15F & 17F) as his examination findings do not fully support the limitations he identified, and they were inconsistent with the medical opinions of Dr. Van Kirk who performed a comprehensive orthopedic CE subsequent to Dr. Henry's CE. Furthermore, Dr. Henry's opinions are inconsistent with the SA physical determinations as well as treating clinical and diagnostic findings, as there was no evidence of a disc herniation or protrusion or nerve root compression or impingement. His opinions were further diminished because the record contains no evidence of any spinal surgery, lumbar epidural steroid injections, regular treatment by specialists, or EMG/NCE testing of the lower extremities. The Function Reports both indicated the claimant's cane had not been prescribed but that he had purchased it. Lastly, no more than minimal weight was given to Dr. Henry's CE because during the mental CE, Dr. Liddell observed that the claimant ambulated without assistance and without difficulty and the Function Reports indicated that the claimant's cane was not prescribed.

///

6

Dr. Chiong's (except as discussed below) and Dr. Van Kirk's medical opinions (except as discussed below) as described in their consultative evaluations were given significant weight as they were supported by their examination findings and observation of the claimant and in the case of Dr. Van Kirk, his review of diagnostic testing of the lumbar spine. Treating clinical and diagnostic findings as well as chart note annotations further support this weight. Lastly, the SA physical determinations indicating the claimant is limited to a modified range of light work and the absence of any spinal or extremity surgery, EMG/NCS testing of the lower extremities by the claimant's treating sources, chiropractor care, and courses of physical therapy further support the weight given to Dr. Chiong's and Dr. Van Kirk's medical opinions.

The undersigned gave minimal weight to Dr. Chiong's opinion in the written portion of his CE that the claimant could stand/walk four hours as the SA physical medical consultants did not accept that opinion and it is inconsistent with Dr. Van Kirk's functional assessment that found the claimant could walk/stand six hours. Furthermore, treating records no not contain clinical or diagnostic findings to support the claimant's ability to walk/stand is limited to four hours as there was no evidence of nerve root compromise, impingement or irritation and no EMG/NCS testing was undertaken of the lower extremities. Additionally, during the mental CE, Dr. Liddell observed the claimant ambulated without assistance and without difficulty. Lastly, the indication by both examining physicians of a need for a cane for walking/standing was given limited weight because in the Function Reports the claimant and his spouse indicated that the cane he was using was not prescribed and a review of treating records did not contain evidence that a cane was subsequently prescribed.

CAR 27-28.

2.      Plaintiff's Contentions

Plaintiff argues:

    At the request of the state agency, Foster had an internal consultative examination by Aung-Win Chiong, M.D. AR 199-205. Dr. Chiong conducted a physical examination and provided a medical source statement. *Id.* Dr. Chiong identified on examination that Foster walked into the examination room using a cane; Foster had an antalgic gait favoring his left leg; and had moderate difficulty getting on and off the examination table. AR 201. Foster could not balance on his heels and toes; and could not perform tandem gait. AR 203. Dr. Chiong noted that Foster used a cane to walk out of the clinic and used the cane until he turned the corner where he was able to walk without the aide of the cane. AR 204, 205. Despite such, Dr. Chiong limited Foster to light exertion (lifting/carrying 20 pounds occasionally, and 10 pounds frequently); and opined that Foster could stand and walk up to four hours maximum. AR 204.
    At the request of the state agency, Foster underwent an orthopedic consultative examination on April 3, 2015, Michael J. Henry, M.D. AR 540-547. Dr. Henry conducted a physical examination and assessed an ability to do work-related activities (physical). *Id.* The initial opinion did not contain the physical examination findings, and thus a new opinion was

7

provided. AR 549, 551-560. Dr. Henry identified Foster as walking with a cane. AR 553. Dr. Henry limited Foster to sedentary exertion (lifting/carrying 10 pounds frequently/occasionally); and opined that Foster requires a cane to ambulate, can ambulate without a cane for 50 feet, usage of cane is medically necessary, and with a cane Foster can carry small objects with free hand. AR 555, 556.

On June 22, 2015, again the state agency sent Foster out for an orthopedic consultative examination, but this time with Dale H. Van Kirk, M.D. AR 568-572, 562-567. Dr. Van Kirk conducted a physical examination, reviewed the 2013 MRI, and assessed an ability to do work-related activities (physical). *Id.* Dr. Van Kirk, limited Foster to light exertion (lifting/carrying 20 pounds occasionally, and 10 pounds frequently); and opined that Foster requires a cane to ambulate for balance, can ambulate without a cane for 50 feet, usage of cane is medically necessary for balance, and with a cane Foster can carry small objects with free hand. AR 562, 563. Dr. Van Kirk opined that Foster can never balance, can walk a block at a slow pace on rough or uneven surface; and can climb a few steps at a slow pace with the use of a single hand rail. AR 567. Dr. Van Kirk, on physical examination noted that Foster had an abnormal Romberg test; he wavers and almost falls after five seconds; tandem walk with one foot in front of the other was difficult due to balance. AR 570. Dr. Van Kirk, noted that though Foster was able to walk around the examination room without the use of cane, Foster should use the cane when he is out and about for even and uneven terrain due to balance. AR 571.

\* \* \*

The ALJ gave minimal weight to Dr. Henry's opinion; and gave significant weight to Drs. Chiong and Van Kirk's opinion. AR 26. However, the ALJ gave little weight the need of using a cane for standing/walking because the function reports from Foster and his wife show that the cane was not prescribed by a doctor; and that the treating records do not contain evidence that a cane was subsequently prescribed. AR 27. The ALJ did not provide legally sufficient reasons rejecting the need of a cane to ambulate. *Morgan,* 169 F.3d at 603-604; *Lester,* 81 F.3d at 830-831.

More specifically regarding the reasons articulated by the ALJ for rejecting the doctors' opinions regarding use of a cane, plaintiff argues:

The ALJ rejected all three consultative examiner's opinions assessment of Foster's need to use a cane because there was no evidence of a prescription of a cane. AR 27. On May 28, 2013, Foster requested an order for a new cane to his primary care physician Lauro Tangouangco, M.D. AR 497-499. Dr. Tangouangco appeared to have responded in the affirmative, and the information of Foster's pharmacy was inputted. AR 497. If Foster's primary care physician did not agree to a new cane, then he would not have prescribed it to be sent to Foster's pharmacy. The ALJ is required to review the record as a whole. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion).

/ / /

In addition, the medical record establishes the use of cane. On February 6, 2013, Foster ambulates with a cane. AR 264. The Social Security field officer noted that Foster walked with an assistance from a cane, and leaned heavily on the cane to get up and down. AR 284. On April 19, 2013, Foster again was noted to ambulate with a cane on a level carpeted surface. AR 323. On May 6, 2013, Foster ambulates with a single point cane. AR 531. On May 21, 2013, Foster ambulates with single point cane. AR 505. On August 5, 2013, Foster ambulate with a cane. AR 443. On August 22, 2013, Foster again ambulates with a cane. AR 443. On September 14, 2015, Foster ambulates with a cane. AR 943.

All three consultative examinations exhibited some type of abnormality as to walking. Dr. Chiong, observed that Foster could not balance on his heels and toes; and could not perform tandem gait. AR 203. Dr. Henry observed that Foster walks with a cane. AR 553. Dr. Van Kirk, on physical examination noted that Foster had an abnormal Romberg test; he wavers and almost falls after five seconds; tandem walk with one foot in front of the other was difficult due to balance. AR 570. Dr. Van Kirk, noted that though Foster was able to walk around the examination room without the use of cane, Foster should use the cane when he is out and about for even and uneven terrain due to balance. AR 571.

* * *

The ALJ gave all three-examiner's opinion little weight as to the required use of cane because Foster and his wife indicated in function reports that the cane was not prescribed. AR 27. Those function reports were signed on May 27, 2013. AR 186, 193. On May 28, 2013, Foster requested an order for a new cane to his primary care physician Lauro Tangouangco, M.D. AR 497-499. Dr. Tangouangco appeared to have responded in the affirmative, and the information of Foster's pharmacy was inputted. AR 497. The fact that the cane was not prescribed prior to May 28, 2013, does not mean that the cane was not prescribed after May 28, 2013. The evidence shows that it was. The ALJ may not substitute his own interpretation of the medical evidence for the opinion of medical professionals. *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999). See *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) (ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings). The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990).

3.  <u>Applicable Legal Standards</u>

"The ALJ must consider all medical opinion evidence." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. <u>See</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. <u>See</u> <u>id.</u>

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

    4.  Disposition

Dr. Chiong submitted a report on August 8, 2012, contained in the record at Exhibit 1F, following an examination. See CAR 254-266; SAT 199-205. Dr. Chiong did not specifically opine plaintiff required use of a cane. See id. The doctor stated:

> Observation of the claimant during the examination and post-examination, his symptoms appear to be out of proportion to his physical findings. He uses a cane as an assistive device which was given to him by his son. The top of the cane appears to be very new although he claims he had used it for a year but said that he changed his cane just recently. Outside of the examination room he was using the cane with an antalgic gait until he turns the corner when the need for the cane was less obvious.

CAR 261; SAT 205.

Dr. Henry also examined plaintiff and prepared a revised report on April 3, 2015, contained in the record at Exhibit 17F. See SAT 550-560. Dr. Henry merely noted plaintiff walked with a cane but expressed no opinions in this regard. See id. Dr. Van Kirk performed an examination of plaintiff and submitted a report on June 22, 2015, in the record at Exhibit 18F. See SAT 561-573. Regarding functional limitations, Dr. Van Kirk opined plaintiff ". . .should use his cane when he is out and about for even and uneven terrain because of his balance problem." Id. at 571. The doctor also noted: "He was able to walk around the examination room today without the use of

his cane, however." SAT 571-572. Dr. Van Kirk acknowledged the cane was prescribed by plaintiff's doctor. See id. at 572. Despite these statements, the doctor opined plaintiff could walk cumulatively for six hours in an eight-hour day. See id. at 571. The doctor also opined plaintiff could frequently carry 10 pounds and occasionally carry 20 pounds. See id. at 572.

As to the need for a cane, the ALJ stated:

> Lastly, the indication by both examining physicians of a need for a cane for walking/standing was given limited weight because in the Function Reports the claimant and his spouse indicated that the cane he was using was not prescribed and a review of treating records did not contain evidence that a cane was subsequently prescribed.

CAR 27.

According to plaintiff, the ALJ's analysis is flawed because, contrary to the ALJ's finding, a cane was in fact prescribed:

> On May 28, 2013, Foster requested an order for a new cane to his primary care physician Lauro Tangouangco, M.D. AR 497-499. Dr. Tangouangco appeared to have responded in the affirmative, and the information of Foster's pharmacy was inputted. AR 497. If Foster's primary care physician did not agree to a new cane, then he would not have prescribed it to be sent to Foster's pharmacy.

Plaintiff adds: "The fact that the cane was not prescribed prior to May 28, 2013, does not mean that the cane was not prescribed after May 28, 2013. The evidence shows that it was."

Dr. Chiong examined plaintiff in August 2012. Plaintiff was not prescribed a cane until May 2013. Therefore, as of the time of Dr. Chiong's evaluation, plaintiff was not using a cane pursuant to a doctor's prescription and, as such, the ALJ's analysis is sound. Moreover, the court notes Dr. Chiong did not expressly opine as to the need to use a cane and, to the contrary, suggested plaintiff was exaggerating symptoms in this regard. See CAR 261; SAT 205. For these reasons, the court finds no error with respect to Dr. Chiong.

Dr. Henry examined plaintiff in April 2015 – after plaintiff was prescribed a cane in May 2013. Dr. Henry, however, merely noted plaintiff walked with a cane and expressed no opinions in this regard. See CAR 24. Because Dr. Henry did not, as plaintiff suggests, opine plaintiff required use of a cane, the court does not agree with plaintiff the ALJ erred as to Dr. Henry.

12

Dr. Van Kirk examined plaintiff in June 2015 – also <u>after</u> plaintiff was prescribed a cane. Because Dr. Van Kirk acknowledged plaintiff had been prescribed a cane, <u>see</u> SAT 572, the reasoning provided by the ALJ – that "treating records did not contain evidence that a cane was. . .prescribed" – is flawed because it is not supported by substantial evidence. Any error, however, is harmless.

The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts. For example, in <u>Stout v. Commissioner of Social Security</u>, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Id.</u> at 1056; <u>see also</u> <u>Robbins v. Social Security Administration</u>, 466 F.3d 880, 885 (9th Cir. 2006) (citing <u>Stout</u>, 454 F.3d at 1056). Similarly, in <u>Batson v. Commissioner of Social Security</u>, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's testimony. Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied there was substantial evidence supporting the ALJ's decision. Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

<u>Id.</u> at 1197 (citing <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1131 (9th Cir. 1990)).

In <u>Curry</u>, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education. The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion. See <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in <u>Carmickle v. Commissioner</u>, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility. Citing <u>Batson</u>, the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless

13

error." See id. at 1162. The court articulated the difference between harmless error standards set forth in Stout and Batson as follows:

> . . . [T]he relevant inquiry [under the Batson standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error. In Batson, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record. We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision. Likewise, in Stout, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."
>
> Our specific holding in Stout does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue. There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported.

Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

Thus, where the ALJ's errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the Stout standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred. Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the Batson standard applies and any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid.

Applying the Batson standard given the ALJ's citation to a reason unsupported by the record, the court finds the ALJ's error is harmless because it is inconsequential to the ultimate disability determination. As noted above, while Dr. Van Kirk noted plaintiff's use of a cane prescribed by his doctor, Dr. Van Kirk was critical of plaintiff's need to use a cane, noting plaintiff did not use a cane when walking around during the examination. See SAT 571-572. Moreover, despite the doctor's observations regarding plaintiff's use of a cane, Dr. Van Kirk did not impose any significant work-related functional restrictions as a result. Notably, Dr. Van Kirk

opined plaintiff could walk cumulatively for six hours in an eight-hour day, and could frequently carry 10 pounds and occasionally carry 20 pounds. See id. at 571-572. Plaintiff's citations to various instances when he was observed using a cane for ambulation do not undermine the court's conclusion because the use of a cane, in and of itself, does not indicate significant work-related restrictions in activities involving ambulation and, indeed, in this case Dr. Van Kirk found none.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is directed to terminate plaintiff's motion for summary judgment filed October 23, 2017, (Doc. 13) as a pending motion;

2. Plaintiff's motion for summary judgment filed April 16, 2018, (Doc. 27) is denied;

3. Defendant's motion for summary judgment (Doc. 28) is granted;

4. The Commissioner's final decision is affirmed; and

5. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  January 3, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE